**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL |
| | : | |
| v. | : | |
| JOSEPH SERRANO | : | NO. 05-cr-67-1 |

**MEMORANDUM AND ORDER**

*PART ONE.*

      The Antiterrorism and Effective Death Penalty Act of 1996 (commonly known as "AEDPA," and codified as 28 U.S.C. §§2241-2266) deals with the right of all persons in state custody, or in federal custody, to file a petition in a federal court seeking the issuance of a writ of habeas corpus.  In the context of prisoners in federal custody, if such a writ of habeas corpus is issued by a federal court, the prisoner will be released from federal custody on the grounds that certain rights accruing to that prisoner pursuant to the United States Constitution[1] have been violated; habeas corpus motions pursuant to AEDPA are the ***only***[2] possible means of obtaining this type of relief from federal custody.  AEDPA provides for exclusive[3] relief by means of 28 U.S.C. §2255 for a petitioner who is in federal custody who makes a constitutional attack on the imposition (and not the execution)[4] of a federal conviction and/or a federal sentence,

---

[1]For the purpose of brevity, we will use the term "Constitutional" to refer not only to attacks on federal or state custody based on alleged violations of the U.S. Constitution, but also to attacks on such custody based on any asserted federal collateral grounds, such as: attacks based on alleged violations of federal statutes; or, attacks based on alleged violations of treaties involving the United States; or, attacks based on an alleged lack of jurisdiction by the sentencing court; or, in federal custody cases, attacks based on allegations that the sentence imposed exceeds the legal maximum.

[2]<u>Cradle v. United States ex rel Miner</u>, 290 F.3d 536 (3rd Cir. 2002).

[3]<u>Cradle v. United States ex rel Miner</u>, 290 F.3d 536 (3rd Cir. 2002).

[4]<u>Rios v. Wiley</u>, 201 F.3d 257 (3rd Cir. 2000).

such attack being made after the imposition of the federal sentence.[5]

By means of AEDPA, Congress ***intentionally*** created a series of ***restrictive gate-keeping conditions*** which must be satisfied for a prisoner to prevail regarding a petition seeking the issuance of a writ of habeas corpus pursuant to 28 U.S.C. §2255. One such intentionally restrictive gate-keeping condition is 28 U.S.C. §2255's ***strict and short statute of limitations***. Another one of these intentionally restrictive gate-keeping conditions is 28 U.S.C. §2255's so-called ***"second or successive rule"*** which generally forbids a litigant from filing a §2255 habeas if that litigant had at least one prior §2255 habeas if that previous §2255 petition was "dismissed after adjudication of the merits of the claims presented."[6] These strict AEDPA gate-keeping procedures were enacted by Congress in order to support the policy of creating finality with respect to state and federal criminal prosecutions.[7]

## *PART TWO.*

In order for a reader to understand this Memorandum and Order, it is necessary to understand Serrano's version of the alleged facts concerning the events that allegedly led to his current federal custodial status. Serrano alleges that approximately one week before December 3, 2004, "he was contacted by a male known as 'main' and asked to meet him at the Sunoco Gas Station at Frankford and Lehigh Avenues in

---

[5]Where there is an attack on a federal conviction which does not involve a Constitutional argument, there is no right to habeas corpus relief, and the proper remedy lies in a request for a new trial pursuant to Federal Rule of Criminal Procedure 33. Ruiz v. USA, 221 F.Supp. 2d 66 (D.Mass. 2002), aff'd, 339 F.3d 39 (1st Cir. 2003). Where there is an attack on a federal sentence which does not involve a Constitutional argument, there is not right to habeas corpus relief, and the proper remedy lies in a request for a new sentence pursuant to Federal Rule of Criminal Procedure 35. USA v. Canino, 212 F.3d 383 (7th Cir. 2000).

[6]Stewart v. Martinez-Villareal, 523 U.S. 637 (1998).

[7]Woodford v. Garceau, 538 U.S. 202 (2003); Duncan v. Walker, 533 U.S. 167 (2001); Crews v. Horn, 360 F.3d 146 (3rd Cir. 2004).

Philadelphia. 'main' asked Serrano to bring a quarter-pound of cocaine to sell him." Serrano admits that he and main agreed that the actual sale of the cocaine would occur in the early morning hours of December 3, 2004 at the said Sunoco station; Serrano then "went to his guy (cocaine supplier) and obtained the quarter pound of cocaine."

At the time scheduled for the cocaine sale (in the early morning hours of December 3, 2004 at the said Sunoco station), the deal allegedly went bad, and ended with Serrano being kidnaped by thugs and robbed by them of the quarter-pound of cocaine, as well as a Mercedes Benz automobile which Serrano was using, and cash in the approximate amount of $1,900.00 (which was in Serrano's wallet). Serrano states that somehow he "escaped" from the clutches of these thugs, and that immediately afterward, Serrano "...flagged down (police) officers and reported that he has been robbed..." Serrano claims that in the process of explaining what had happened, he was so excited by the events he had witnessed that he made "spontaneous utterances" to the police in which he admitted, more or less, that the entire chain of events began with Serrano's attempt to sell a quarter-pound of cocaine. At that point, Philadelphia police allegedly followed the stolen Mercedes Benz at high speed, ultimately resulting in a gunfight between the police and one of the thugs that left that thug, who had allegedly robbed and kidnaped Serrano dead. Police found cocaine both in the Mercedes Benz and in the clothing of the dead man who allegedly robbed and kidnaped Serrano.

### *PART THREE.*

On January 13, 2005, a sealed complaint was filed against Serrano, which the Clerk of this Court properly labeled as 05-cr-067-1. Serrano subsequently pled guilty to the charge made against him[8] on April 18, 2006; he was sentenced on September 8, 2006 to 151 months of incarceration, to be followed by three years of supervised

---

[8]This charge was Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §841(a)(1).

release (plus a fine and a special assessment).

### *PART FOUR.*

On four separate dates,[9] petitioner filed documents in this court as part of 05-cr-067-1, seeking to obtain his release from federal custody based on the following claims:

1. That his crucial comments to the police about his attempt to sell cocaine were allegedly, in Serrano's own words, "uncorroborated" (by which he seems to mean that these comments were intended to relate solely to those crimes in which he, Serrano, was the victim (i.e. the robbery of the drugs, car and cash and the attempted kidnaping)).

2. That Serrano was allegedly arrested without probable cause, as Serrano allegedly did not mean for his crucial words about the robbery and attempted kidnaping in which he was the victim to be the basis of his own arrest on drug charges.

3. That because Serrano allegedly did not mean for his crucial words about the robbery and attempted kidnaping in which he was the victim to be the basis of his own prosecution on drug charges, that he was allegedly denied his Constitutional right against self-incrimination.

4. That his counsel was allegedly ineffective for failing to pursue the argument that Serrano's comments to the police about his attempt to sell cocaine were, in Serrano's words, "uncorroborated" (by which he seems to mean that his crucial comments were intended to relate solely to those crimes in which he was the victim (i.e. the robbery of the drugs, car and cash and the attempted kidnaping)).

These are clearly claims that Serrano's rights guaranteed by the Fourth, Fifth and Sixth Amendments to the United States Constitution have been violated by the

---

[9]August 13, 2007; September 24, 2007; October 17, 2007; and, March 6, 2008

federal court that convicted and sentenced him, for which relief is provided to prisoners by AEDPA; however, petitioner repeatedly consists in all of his filings that he does not wish to pursue his arguments pursuant to either 28 U.S.C. §2241 or 28 U.S.C. §2255; instead, he bases his grounds for relief on Federal Rule of Civil Procedure 60(b).  For the following reasons, this attempt to invoke Rule 60(b) to obtain release from custody with an argument based upon the United States Constitution must fail, as any attempt to challenge the merits of an underlying decision with claims based on the United States Constitution may only be pursued by a prisoner by means of a habeas corpus motion filed pursuant to AEDPA.[10]

The express language of AEDPA itself is strong evidence of Congressional intent that AEDPA, and ***only*** AEDPA, is available for relief from incarceration for prisoners who make an argument for release from custody based on the United States Constitution, and that "Rule 60(b) applies ... only to the extent that it is not inconsistent with (AEDPA)."  Gonzalez v. Crosby, 545 U.S. 524 (2005).  Accord, Pridgen v. Shannon, 380 F.3d 721 (3d Cir. 2004); United States v. Baptiste, 223 F.3d 188 (3d Cir. 2000); In re Dorsainvil, 119 F.3d 245 (3d Cir. 1997).

The Supreme Court of the United States has held that federal statutes, such as AEDPA, take precedence over any rule of court (including Rule 60(b)), and that where a prisoner files a purported Rule 60(b) motion which makes an argument based upon the United States Constitution, that that purported Rule 60(b) petition is to be treated as "similar enough" (in the Supreme Court's own words) to an AEDPA claim that failure to apply the second or successive rule of AEDPA would be inconsistent with AEDPA.  Gonzalez v. Crosby, 545 U.S. 524 (2005).  See, also, Pridgen v. Shannon, 380 F.3d 721 (3d Cir. 2004); Robinson v. Johnson, 313 F.3d 128 (3d Cir. 2002); United States v.

---

[10]Gonzalez v. Crosby, 545 U.S. 524 (2005); Pridgen v. Shannon, 380 F.3d 721 (3d Cir. 2004).

Baptiste, 223 F.3d 188 (3d Cir. 2000); In re Dorsainvil, 119 F.3d 245 (3d Cir. 1997). The fact that habeas corpus relief pursuant to AEDPA is precluded by AEDPA's "second or successive rule," or by AEDPA's strict and short statute of limitations, or by any other provisions of AEDPA, does not mean that an alternative route to the same goal is available by means of a Petition pursuant to Rule 60(b).  Gonzalez v. Crosby, 545 U.S. 524 (2005); United States v. Baptiste, 223 F.3d 188 (3d Cir. 2000).  As the Third Circuit Court of Appeals has correctly noted, if a petitioner could, by means of such a Rule 60(b) petition, get around Congress's clear intent in adopting AEDPA, the result would be "a complete miscarriage of justice."  United States v. Baptiste, 223 F.3d 188 at 190.  Accord, Gonzalez v. Crosby, 545 U.S. 524 (2005); Pridgen v. Shannon, 380 F.3d 721 (3d Cir. 2004).

      In the context of prisoners, the only way that a Rule 60(b) motion would not be treated as a de facto AEDPA petition is if the Rule 60(b) Motion did not in any way attack the prisoner's conviction and/or sentence with an argument based upon the federal constitution.  Gonzalez v. Crosby, 545 U.S. 524 (2005).  This is clearly not the case in the matter at hand involving Serrano.

      However, even though, for the previously stated reasons, petitioner's claims are not cognizable upon the basis of Rule 60(b), but may perhaps, possibly, be cognizable under 28 U.S.C. §2255, this court is powerless, pursuant to USA v. Miller, 197 F.3d 644 (3d Cir. 1999) to re-characterize any document or petition that is not captioned as a §2255 habeas corpus petition as a §2255 habeas corpus petition without first gaining the petitioner's consent.  Normally in situations such as this, the court would ask a prisoner's consent to so re-characterize the case; however, Serrano forcibly, unmistakably and vociferously states that he does not want the instant matter re-characterized as a habeas corpus case under any circumstances.  Given the situation, this court will comply with Serrano's stated wishes on this issue of characterization or

re-characterization.

  Accordingly, this           day of July, 2008, it is hereby

  **ORDERED** that petitioner's application for relief pursuant to Federal Rule of Civil Procedure 60(b) is **DENIED**, and, it is further

  **ORDERED** that the Clerk of this Court shall mark this matter as **CLOSED** for all purposes, including statistics.


              **S/ ANITA B. BRODY**
              **ANITA B. BRODY, U.S. District Judge**