

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :
                                  :          CRIMINAL ACTION
          v.                **FILED**
                                  :          NO. 05-67-1
JOSEPH SERRANO            JUL 1 8 2011

**July /X/, 2011**          MICHAEL E. KUNZ, Clerk
                           By_____ Dep. Clerk          **Anita B. Brody, J.**

## MEMORANDUM

On April 18, 2006, Defendant Joseph Serrano ("Serrano") pled guilty to one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Serrano petitions the court to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255, based on a Sixth Amendment claim of ineffective assistance of counsel. The surviving ineffective assistance of counsel claim relates to counsel's failure to move to suppress Serrano's confession on Miranda grounds. For the following reasons, I conclude that Serrano did not receive effective assistance of counsel, and I will **GRANT** Serrano's Petition.

## I. BACKGROUND

This case arises out of events that transpired in December 2004. Serrano pled guilty to the following facts: at approximately 1:00 AM on December 3, 2004, Serrano waved down an officer of the Philadelphia Police Department.[1] Serrano informed the officer that he had just

---

[1] The facts relating to the events that lead up to Serrano's interrogation are reported as alleged by the Government in its brief. These facts remain unproved allegations, and are only included as background information.

1

been robbed by two armed males who kidnapped him and stole his white Mercedes-Benz. The officer took off in pursuit of Serrano's Mercedes-Benz. During the ensuing chase, one of Serrano's kidnappers got out of the car and escaped. The other kidnapper continued to drive, but ultimately crashed the car into a wall. As the officer, now accompanied by a team of other officers, approached the crashed Mercedes-Benz, the remaining kidnapper opened fire from inside the car. The team of officers returned fire and retreated to find cover. After two such volleys, the officers ordered the kidnapper to leave the car. The kidnapper kicked open the driver-side door and jumped out, continuing to fire at the officers. The officers returned fire; the kidnapper was shot and fell to the ground. The kidnapper was rushed to the hospital where he was pronounced dead. Meanwhile, the police recovered from the Mercedes a plastic bag containing a white powdery substance. Change of Plea Hr'g Tr., Apr. 18, 2006.

After the shootout, police officers from the Philadelphia Police Department escorted Serrano to the police "roundhouse."[2] Evid. Hr'g Tr. 70:16-18, June 23, 2011. The only evidence as to what transpired at the roundhouse derives from Serrano's testimony at the June 23, 2011 evidentiary hearing. Because the Government failed to present any evidence whatsoever that might rebut Serrano's testimony, I take the facts relating to Serrano's interrogation at the roundhouse as stated by Serrano at the hearing.

According to Serrano, when he arrived at the station, he was searched and left alone inside a locked interrogation room approximately 12 feet by 12 feet in size. Id. at 70:18-71:25, 72:1-6. He tried to open the door to ask if he could use the restroom, but the door was locked,

_____

[2] The facts relating to Serrano's interrogation at the roundhouse are taken from the facts as presented at the June 23, 2011 evidentiary hearing.

2

and no one responded. Id. at 71:13-72:6. After four to five hours alone, Detective Bova ("Bova") of the Philadelphia Police Department entered the room and began to question Serrano about the kidnapping. Id. at 72:9-14. After repeating the same questions several times and getting no response, Bova left Serrano alone in the room. Id. 72:9-22.

After a few minutes, an agent from the Unites States Drug Enforcement Agency ("DEA") entered the interrogation room. Id. 72:17-18. The DEA agent told Serrano that the DEA knew that Serrano was at the scene of the crime to do a drug deal. Id. at 72:15-20. For approximately thirty minutes, the agent asked Serrano questions about his involvement in drug activity. Id. at 73:2-15. Serrano refused to answer the agent's questions. Id.

The DEA agent left the room, leaving Serrano alone for several more hours. Id. at 74:3-5. Bova then returned to the interrogation room a second time, and informed Serrano that the police department was not interested in his involvement in drug activity, and that Serrano could leave if he would "just tell [the police] that he did a couple of deals with the guys and this time they robbed [him]." Id. at 74:13-75:1. Taking Bova at his word, Serrano agreed to sign a statement in line with what Bova had said. Id. at 74:13-18. With Bova and six to eight other officers watching him in the interrogation room, Serrano signed a written statement confessing to participating in a drug transaction. Id. at 77:14-17. Serrano was detained for two or three more hours, and was finally released from the police station the morning of December 4, 2004. Id. at 75:4-76:6. Serrano was not arrested during, or immediately after his interrogation. Id.

In all, Serrano was held in the interrogation room for over 24 hours. Id. at 74:17-18, 75:25-76:3. At all times during this period, there were either officers in the interrogation room with Serrano, or the door was locked. Id. at 75:12-23. Serrano was repeatedly asked questions

3

about his involvement in drug activity, despite his initial refusal to respond to such questions. Serrano was never told that he was not under arrest, and was never told that he was free to leave. Id. at 75:2-14. In fact Bova only told Serrano that he could leave if he confessed to being involved in a drug transaction; Serrano believed that if he did not make such a confession he would not be allowed to leave. Id. 74:13-18, 76:11-14. At no time during this session was Serrano informed of his rights under Miranda v. Arizona, 384 U.S. 436 (1966).

## II. Procedural History

### A. Events Leading to Serrano's Guilty Plea and Sentencing[3]

On January 13, 2005, a Complaint and Warrant were filed under seal in this District, charging Serrano with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). (ECF No. 1). On January 14, 2005, Serrano was arrested and had an initial appearance before a Magistrate Judge. (ECF No. 4). The Magistrate Judge granted the Government's request for temporary detention, and scheduled a detention hearing for late January 2005. Rossman D. Thompson ("Thompson") of the Federal Defender Association of Philadelphia was appointed to represent Serrano. Id. Thompson entered his appearance on January 25, 2005, two days before the detention hearing scheduled for January 27, 2005. (ECF No. 10).

However, prior the detention hearing Serrano retained new counsel, Peter C. Bowers ("Bowers"), and at the hearing Thompson withdrew from the case. (ECF Nos. 13, 16). The

---

[3] These facts were not disputed at the June 23, 2011 evidentiary hearing.

4

hearing was continued until February 3, 2005. (ECF No. 13). On February 3, 2005, the Government withdrew its request for pretrial detention. (ECF No. 14). On February 9, 2005, Serrano was indicted on one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) arising out of the drug transaction that occurred on December 3, 2004. (ECF No. 17).

After Serrano was indicted, Bowers negotiated a plea agreement with the government under which Serrano would cooperate with the Government and seek a downward departure at sentencing. A hearing was scheduled for April 8, 2005, at which Serrano would plead guilty and the plea agreement would be received by the court. (ECF No. 22). Serrano failed to appear at the hearing and the negotiated plea agreement was never executed; the hearing was rescheduled for April 11, 2005. (ECF No. 23). Serrano also failed to appear at the rescheduled April 11, 2005 hearing. Upon failing to appear, Serrano's bail was revoked and a bench warrant was issued for his arrest. (ECF Nos. 24-25).

Serrano remained a fugitive until 2006, when he was discovered in a Philadelphia correctional center on unrelated state charges. On February 17, 2006, Serrano was produced before this Court, and was arraigned on Count One of the instant indictment. (ECF No. 29). Serrano entered a plea of not guilty, and stipulated to pre-trial detention. Id. On March 2, 2006, Thompson again entered an appearance to represent Serrano. (ECF No. 35). Thompson testified at the June 23, 2011 evidentiary hearing that he negotiated a written plea agreement with the Government. At the evidentiary hearing, I noted that Serrano had actually entered an open guilty plea and no written plea agreement was received at the 2006 change of plea hearing. Thompson

5

responded that there had been a draft agreement, but stated that for some reason it was not ultimately signed.[4]

On April 18, 2006, Serrano entered an open guilty plea to possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). (ECF No. 41). On September 5, 2006, Serrano was sentenced to 151 months imprisonment, three years supervised release, a $250 fine, and a $100 special assessment. (ECF No. 48). Serrano did not appeal his sentence.

## B. Serrano's § 2255 Petition

On August 13, 2007 Serrano filed a pro se Notice of Motion informing the court that he would be filing a subsequent Motion for Relief from Judgment under Federal Rule of Civil Procedure 60. (ECF No. 50). On September 24, 2007, and again on October 17, 2007 and March 6, 2008, Serrano filed various pro se Motions for Relief from Judgment, in accordance with his August 2007 Notice. (ECF Nos. 51, 52, and 54). In July 2008, I denied these Motions on the basis that § 2255 provided the sole basis for relief for Serrano's claims. (ECF Nos. 55, 56).

On July 20, 2009, Serrano filed a Motion requesting that his previous Notice of Motion and Motions be recharacterized as a § 2255 Petition. (ECF No. 57). On September 2, 2009, I held a hearing on this Motion, and on September 10, 2009, I granted Serrano's Motion in part,

---

[4] Neither the Government nor Thompson adequately explained why the agreement was not signed.

6

recharacterizing the Notice of Motion and Motions as a petition for habeas relief under § 2255 nunc pro tunc, and permitting Serrano to file an Amended Petition. (ECF No. 62).[5]

On October 9, 2009, Serrano filed a pro se Amended Petition raising several ineffective assistance of counsel claims. I appointed counsel to represent Serrano, and ordered additional briefing on how Serrano's claims were affected by the Supreme Court's decision in Premo v. Moore, -- U.S. --, 131 S. Ct. 733, 742 (2011), which was issued while Serrano's petition was pending. On February 11, 2011, Serrano retained habeas counsel. On March 8, 2011 I scheduled an evidentiary hearing for June 8, 2011, although the hearing was ultimately continued until June 23, 2011. On June 15, 2011, in advance of the hearing, I denied Serrano's ineffective assistance claims arising out of counsel's performance during sentencing, leaving only his ineffective assistance claims relating to counsel's failure to move to suppress Serrano's confession on Miranda grounds, and to counsel's failure to appeal his sentence. (ECF No. 86).

## C. The June 23, 2011 Evidentiary Hearing

On June 23, 2011, I held an evidentiary hearing on Serrano's two remaining ineffective assistance claims, relating to the suppression of Serrano's confession on Miranda grounds, and to the failure to appeal Serrano's sentence. At the hearing, the Government called Thompson as its sole witness, and presented no evidence relating to Serrano's representation by Bowers. Thompson testified that he had no involvement in the case during the period in which Serrano

---

[5] The Government argues in its brief for the third time that Serrano's petition was not timely. I have already rejected that argument twice, and I decline to revisit the issue. (See ECF Nos. 62, 86).

7

had retained Bowers. Rather, Thompson's testimony related solely to his representation of Serrano beginning on February 21, 2006, when Serrano was again produced before this court.

Thompson said that the entire focus of his representation was to negotiate the lowest sentence possible for Serrano. Thompson testified that he negotiated a written plea agreement with the Government. After I noted that Serrano had entered an open guilty plea and that there was no written plea agreement at the 2006 change of plea hearing, Thompson testified that there had been a draft agreement, but that for some reason it was not ultimately signed. The supposed agreement, according to Thompson, lowered Serrano's Guidelines range from 262-327 months, to his ultimate Guidelines range of 151-188 months.[6]

When questioned about the possibility of suppressing Serrano's December 2004 confession, Thompson asserted that he did not believe that a motion to suppress would have been successful because Serrano was not "in custody" when the confession was made. Id. at 20:19-20. He reached this conclusion based on the fact that Serrano had not been charged locally when the confession was made. Id. at 21:19.

On cross-examination, however, Thompson conceded that it is possible for someone to be in custody without being charged with a crime, and that the relevant inquiry would be whether the defendant reasonably believed that he was "free to leave." Id. at 57:22-59:12. Thompson admitted that he did not know the circumstances surrounding the confession, and made no inquiry about the confession beyond reading the written statement itself, which he admitted he did not "read [] all that carefully." Id. 45:9-15, 54:22-23, 58:12-59:20. Thompson also admitted

---

[6] Thompson and the Government explained at the June 23, 2011 evidentiary hearing that the supposed agreement was in fact little more than a handshake agreement. Evid. Hr'g Tr. 35:7-10.

8

that he could not recall consulting with Serrano about the possibility of suppression, or even the possibility of a Zudick plea that would have permitted Serrano to attempt to suppress before pleading guilty. Id. at 47:24-48:2, 51:5-52:3. When pressed on cross-examination, Thompson further admitted that a motion to suppress would have "absolutely" been an important motion in this case that could have been raised; Thompson agreed that "the confession killed them[,]" and that "[w]ithout the confession it would have been a much different case . . . ." Id. at 49:2-7, 57:6-13

Finally, Thompson also testified that another problem with the confession was that it was "governed by the proffer letter which basically says you can't take a statement, or a position different materially different than what was discussed during the proffer." Id. at 20:15-18. On cross-examination, however, Thompson admitted that "the proffer statement would have no relevance at a suppression hearing." Id. at 52:7-9. Thompson also admitted that if the suppression motion were successful, "the Government wouldn't have had any kind of case against [Serrano] whatsoever in which the proffer statement would really be an issue" and that "the proffer statement in this context sort of goes out of play." Id. at 52:10-18. The Government did not present evidence of exactly what Serrano supposedly stated at this proffer session, and did not provide the court with a copy of the proffer letter that supposedly governed the use of the proffered statements.

The sole defense witness at the hearing was Serrano himself. Serrano testified primarily as to the facts surrounding the December 2004 confession. The Government did not contradict this evidence on cross-examination, and presented no evidence that contradicted anything

9

Serrano said. Additionally, at no time during the hearing or afterwards did the Government request an additional opportunity to present evidence that might rebut Serrano's testimony.

Serrano also testified as to his interactions with counsel leading up to his guilty plea. Serrano stated that neither Bowers nor Thompson discussed with him the possibility of a Zudick plea. Id. at 80:11-22. Serrano stated that neither Bowers nor Thompson discussed with him the possibility of filing a motion to suppress, or any reason not to file a motion to suppress. Id. at 80:23-81:4, 105:11-106:2. Serrano stated that if he had known about the possibility of suppression, he would not have pled guilty. Id. at 81:5-9.

On cross-examination, Serrano admitted that given his flight and his criminal history, his sentence of 151 months imprisonment "could have been a lot worse[.]" Id. at 103:16-17. As Serrano noted on re-direct, however, "[z]ero [months] would have been better than 151[.]" Id. at 106:9-10.

On July 5, 2011, both parties filed briefs outlining what they believe they proved at the evidentiary hearing. On the same date, Serrano withdrew his claim regarding counsel's failure to file an appeal. Serrano's only remaining claim is that counsel was ineffective for failing to move to suppress his confession.

## III. LEGAL STANDARD

Section 2255 empowers a court to "vacate, set aside, or correct" a sentence that "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). If a party is entitled to relief under § 2255(a), "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. § 2255(b).

10

If a petitioner is sentenced after a guilty plea, he or she may obtain relief under § 2255 if he or she can show that the plea was not knowing and voluntary. Hill v. Lockhart, 474 U.S. 52, 56 (1985). A guilty plea by a petitioner who was denied his or her Sixth Amendment right to effective assistance of counsel is not knowing and voluntary—an ineffective assistance of counsel claim can thus serve as the basis for relief under § 2255. Id. at 59.[7]

To prevail on an ineffective assistance of counsel claim a petitioner must meet the Strickland standard; specifically, a petitioner must show both deficient performance by counsel and prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. --, 130 S. Ct. 1473, 1485 (2010). Because "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and [because] defense attorneys must make careful strategic choices in balancing opportunities and risks [prior to a plea] . . . strict adherence to the Strickland standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." Premo v. Moore, -- U.S. --, 131 S. Ct. 733, 741 (2011).

A party raising an ineffective assistance of counsel claim in a § 2255 Petition holds the burden of proving his or her claims. United States v. Otero, 502 F.3d 331, 333 (3d Cir. 2007). Serrano must "sustain[ ] his contentions by a preponderance of the evidence." Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980).

---

[7] Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim, however, is properly brought in the first instance under § 2255. United States v. DeRewal, 10 F.3d 100, 103 (3d Cir. 1993) (citing United States v. Rieger, 942 F.2d 230, 235 (3d Cir. 1991)).

11

## IV. Discussion

Serrano claims that his counsel was ineffective for failing to move to suppress his December 3, 2004 confession prior to his guilty plea. To obtain relief on his claim, Serrano must show both that his counsel's performance was deficient, and that the deficient performance prejudiced him.

### A. Deficient Performance

To show deficient performance, "a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. . . . The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, -- U.S. --, 131 S. Ct. 770, 788 (2011) (internal quotation marks and citations omitted) (quoting Strickland, 466 U.S. at 687-89). "In applying and defining this standard substantial deference must be accorded to counsel's judgment." Premo v. Moore, -- U.S. --, 131 S. Ct. 733, 742 (2011) (citing Strickland, 466 U.S. at 689). Counsel's performance cannot, however, "be accord[ed] the normal deference to strategic choices [where] it was uninformed." Rolan v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006) (citing United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997)).

In the context of a negotiated plea, especially one that occurs well before trial, "[t]he absence of a developed or an extensive record . . . create[s] a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered." Premo, 131 S. Ct. at 742. As a result, a court deciding an ineffective assistance claim should consider the circumstances surrounding the plea when determining whether counsel's performance was deficient.

12

In Premo, the Supreme Court suggested that there may be two justifications for failing to move to suppress a confession prior to a guilty plea; counsel is not deficient for failing to move to suppress if competent counsel could reasonably conclude either: (1) that a motion to suppress would fail on the merits; or (2) that suppression would be futile. Neither justification exists here.

## 1. Likelihood of success

It is well established that "counsel cannot be deemed ineffective for failing to raise a meritless claim." Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000). In order to show deficient performance based on the merits of a suppression motion, Serrano must show that "no competent attorney would think a motion to suppress would have failed." Premo, 131 S.Ct. at 741 (citing Kimmelman v. Morrison, 477 U.S. 365, 382 (1986)). The Government argues that it was reasonable for counsel to conclude that Serrano was not entitled to a Miranda warning and that a suppression motion would thus fail. On the present record, however, no reasonably competent attorney could conclude that Serrano was not entitled to a Miranda warning.

"The rule of Miranda applies if two requirements are met: a defendant must be (1) 'in custody' and (2) subject to 'interrogation' by the Government." United States v. Dupree, 617 F.3d 724, 731 n.7 (3d Cir. 2010) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). The Government does not appear to dispute that Serrano was subject to "interrogation." Rather, the Government claims that Serrano was not "in custody" when he made his confession. Throughout the Government's briefing, the Government summarily states that Serrano was "not in custody" because he was not being held on any charges. Gov. Brief at 14, 25-28, ECF No. 90. Similarly, at the evidentiary hearing, Thompson stated that Serrano was not "not under police custody or control" when he made his confession because he had not been charged with any crime when he

13

confessed. Evid. Hr'g Tr. 21:15-16. That Serrano was not charged with a crime when he made

his confession, however, does not mean that his interrogation was non-custodial—rather, there

are several factors a court must consider when determining whether a defendant was "in custody"

at the time of an interrogation:

> (1) whether the officers told the suspect he was under arrest or free to leave; (2)
> the location or physical surroundings of the interrogation; (3) the length of the
> interrogation; (4) whether the officers used coercive tactics such as hostile tones
> of voice, the display of weapons, or physical restraint of the suspect's movement;
> and (5) whether the suspect voluntarily submitted to questioning.

United States v. King, 604 F.3d 125, 138 (3d Cir. 2009) (quoting United States v. Willaman, 437

F.3d 354, 359 (3d Cir. 2006)).

Serrano's testimony at the evidentiary hearing is the only evidence in the record as to the

circumstances of his interrogation, and his testimony shows in no uncertain terms that he was in

custody during his interrogation. This testimony shows that Serrano was held in an interrogation

room in a police station. Serrano was not told that he was free to leave, and indeed was told that

he could leave only if he confessed to being involved in illegal activity. Evid. Hr'g Tr. 104:13-

23. Serrano was kept in the interrogation room for well over 24 hours. Id. at 74:17-18, 75:25-

76:3. At all times during the confinement there were either officers in the room with Serrano, or

the room was locked. Id. at 75:12-23. Serrano initially refused to voluntarily submit to

questioning, and he only confessed after Detective Bova made clear that Serrano would be

allowed to leave if he signed a written confession. Id. at 73:5-15, 104:21-23. The Government

has not called into question any of Serrano's testimony, and instead simply repeats its conclusion

that Serrano was not in custody. That the Government says he was not in custody, however, does

14

not make it so; the evidentiary record clearly demonstrates that Serrano was in custody when he made his confession.

The inquiry under <u>Strickland</u>, however, is not simply whether the motion to suppress would have meritorious; rather, <u>Strickland</u> requires that no competent counsel could reasonably conclude that the motion was meritless.  Serrano's counsel made no inquiry into the circumstances surrounding the interrogation, or as to any of the other factors that would play into the custodial determination.  <u>See</u> Evid. Hr'g Tr. 58:16-24.  Rather, counsel simply assumed that Serrano was not in custody because he was not arrested at the time of the confession.  The law makes clear, however, that whether or not the confessing party was charged with a crime is only one of many relevant factors in determining whether that party was in custody during an interrogation.  No competent attorney should have made such an assumption based only on the fact that Serrano was not charged at the time of the interrogation. Indeed, Thompson admitted as much at the evidentiary hearing.  Evid. Hr'g Tr. 57:22-58:2.  Counsel's performance was thus constitutionally deficient.

    *2. Futility*

Even if a motion to suppress may have been meritorious, failing to so move does not necessarily render counsel's performance constitutionally deficient.  In some situations, counsel might make a strategic decision not to move to suppress because suppression would be futile.  The Government argues that competent counsel could have concluded that a motion to suppress was futile because Serrano would have been convicted even if his confession had been suppressed.  The present record does not support the Government's position.

The Government cites primarily to Premo, where the Supreme Court concluded that competent counsel could have concluded that a motion to suppress would have been futile. In Premo, counsel represented a defendant who had made one inadmissible confession, and then a second admissible confession. After consulting with the defendant, counsel decided not to move to suppress the first confession because, given the second confession, "it would be unavailing . . . ." Premo, 131 S.Ct. at 738. The Supreme Court agreed that counsel's performance was not deficient, given that the motion to suppress would have had minimal effect and would scuttle ongoing plea negotiations. Id.

Serrano, however, made no second confession. There is no other evidence whatsoever of guilt in the record. The Government pointed to no other evidence of Serrano's guilt at the evidentiary hearing, or at the change of plea hearing. Indeed, Thompson recognized the importance of the confession at the evidentiary hearing:

- Q    Okay. And in this case certainly a motion to suppress the statement that was given to Detective Bova at some point in December of 2004, would have been a relevant motion to this case?

- A    Absolutely.

- Q    Okay. Because essentially in this case, the confession killed them, right?

- A    Oh, absolutely.

- Q    Okay. Without the confession it would have been a much different case, would you agree with me?

- A    Absolutely.

- Q    Far better for the defense?

- A    Absolutely.

16

Evid. Hr'g Tr. 48:22-29:9.

The Government claims that prior to Serrano's proffer session, Serrano signed a proffer letter that permitted the Government to use statements made during the session under certain circumstances. Competent counsel, the Government contends, could have concluded that suppression would have been futile because Serrano would have been convicted based on statements made during the proffer session. The Government, however, has failed to provide the court with the proffer letter, and with any evidence related to what Serrano said in the proffer session. The Government has also failed to provide important details about the proffer session. Notably, it remains unclear whether the proffer session was conducted while Serrano was represented by Bowers, or while he was represented by Thompson. If the proffered statements were made while Serrano was represented by Bowers, it is also unclear what, if at all, Thompson knew of the proffer session, and thus whether a futility argument can be made here, even if Thompson were not made fully aware of the proffer session and the proffer letter.

Rather than submitting any evidence on point, the Government summarily states in its brief that the Government could introduce Serrano's proffered statements as rebuttal evidence if Serrano took the stand at trial. Given that the Government represented at the evidentiary hearing that there was a signed plea agreement, and could not even recall that Serrano's guilty plea was an open plea, see Evid. Hr'g Tr. 34:2-35:20, I am unwilling to accept the Government's word alone as establishing the scope of a proffer letter and the substance of a proffer session well over six years old. See generally Fed. R. Evid. 1002; Acumed LLC v. Adv. Surgical Servs., Inc., 561 F.3d 199, 222 (3d Cir. 2009) (holding that Rule 1002 precluded party from relying on testimony about the substance of a contract where the substance of the contract was at issue). Because the

17

Government has failed to produce any evidence on point, I cannot conclude that competent counsel could reasonably have determined, based Serrano's proffer session, that suppression would have been futile.  See generally United States v. Hardwick, 544 F.3d 565, 570 (3d Cir. 2008) (holding that determining whether the Government can introduce statements made during a proffer session "requires an analysis of the terms of the waiver. A proffer agreement is a contract and its terms must be read to give effect to the parties' intent.").

Even if I assumed that the Government were correct that Serrano's statements could have been used as rebuttal evidence, competent counsel could not have concluded that suppression would be futile here.  If initially Serrano was successful in suppressing his confession prior to any proffer session, there would be no case against him to rebut. As Thompson recognized at the evidentiary hearing, if the motion to suppress were successful, the proffer statement could not have been introduced into the case:

> Q      Okay. You would agree with me that the proffer statement would have no relevance at a suppression hearing?
>
> A      That's correct.
>
> Q      Okay. And if you were successful in suppressing the statement given to Detective Bova, most likely the Government wouldn't have had any kind of case against him whatsoever in which the proffer statement would really be an issue, right?
>
> A      That's correct.
>
> Q      Okay. So the proffer statement in this context sort of goes out of play if the suppression of the confession is successful?
>
> A      That's correct.

Evid. Hr'g Tr. 52:7-18. No reasonable counsel could conclude that a properly argued motion to suppress would have been futile because of statements made during Serrano's proffer session,

18

because those statements could not have been introduced at trial if suppression were successful. On the present record, there is simply no basis on which competent counsel could conclude that a suppression motion would have been futile.

The Government places a lot of weight on the fact that, as in Premo, moving to suppress Serrano's confession would have scuttled ongoing plea negotiations in which Thompson had obtained significant concessions from the Government.[8] In Premo, however, counsel was faced with the stark choice between a favorable plea bargain and a likely conviction at trial. Counsel in Premo reasonably concluded that if he had rejected the plea bargain and moved to suppress, the defendant would have been convicted on the basis of the second confession; without the plea bargain the defendant would have been sentenced to a significantly longer term. Here, on the other hand, counsel decided between taking a plea bargain that would result in 151 months imprisonment and moving to suppress the only piece of evidence of Serrano's guilt, the granting of which would lead to an acquittal. As Serrano noted at the evidentiary hearing, while 151 months imprisonment may be preferable to 360 months, "zero would have been better than 151 . . . ." Evid. Hr'g Tr. 106:9. In other words, while counsel in Premo reasonably decided to take a "quick plea bargain" to avoid the serious possibility of a conviction accompanied by a significantly longer sentence, Serrano's counsel did so despite that the alternative was the suppression of Serrano's confession followed by an acquittal. No competent counsel would have accepted a term of 151 imprisonment given this alternative. Of course counsel might have been

_____

[8] In fact, no plea agreement was executed, and therefore is no record as to the wonderful deal that Serrano received. Both Thompson and the Government refer to a handshake agreement, Evid. Hr'g Tr. 35:7-10, hardly sufficient to substantiate such an agreement.

able to replicate such an agreement if he lost the suppression motion—with victory on appeal on the horizon.

Moreover, counsel in Premo made an informed decision not to move to suppress after consulting with his client. Here, counsel's decision was not only wrong, but it was uninformed; counsel did not speak with Serrano about suppression, did not discuss the possibility of a Zudick plea, and most importantly, made no inquiries about the facts surrounding the confession which may have clarified to counsel that a suppression motion would have been meritorious and worthwhile. See Evid. Hr'g Tr. 23:4-7, 23:13-14 (confirming that Thompson did not inquire as to the circumstances of the interrogation). Counsel's performance "cannot be accord[ed] the normal deference to strategic choices [where] it was uninformed." Rolan v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006) (citing United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997)). Even if Serrano's counsel had declined to move to suppress for strategic reasons, then, his uninformed strategic choice would not be afforded the normal deference given to strategic decisions made by trial counsel.

**B. Prejudice**

"With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Richter, 131 S. Ct. at 787 (quoting Strickland, 466 U.S. at 694). Where a petitioner has pled guilty to a charge, the petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Premo, 131 S. Ct. at 743 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985). A "reasonable

20

probability is one 'sufficient to undermine confidence in the outcome.'" United States v. Gray,

878 F.2d 702, 710 (3d Cir.1989) (quoting Strickland, 466 U.S. at 694). See generally United

States v. Kauffman, 109 F.3d 186, 191 (3d Cir. 1997) (holding that a defendant was prejudiced

where his counsel failed to introduce crucial evidence that would cast doubt on the government's

case prior to a guilty plea). It is sufficient to show a reasonable probability that a rational

decisionmaker in the defendant's place would have proceeded to trial. United States v. Orocio, --

F.3d --, 2011 WL 2557232, at *9 (3d Cir. June 29, 2011).

Here, a properly argued motion to suppress would have sounded a death knell for the

prosecution's case; that suppression would have denied the Government its only evidence of

Serrano's guilt shows that Serrano was prejudiced here. If his confession was excluded, Serrano

had no reason to plead guilty and had every reason to proceed to trial, where the Government's

case would collapse without any evidence of guilt.

## V. CONCLUSION

The record makes abundantly clear that the performance of Serrano's counsel prior to his

guilty plea was constitutionally deficient, and that this performance caused Serrano severe

prejudice.[9] On the record before me, Serrano was denied his Sixth Amendment right to effective

assistance of counsel, and his plea was not "knowing and voluntary." I will **GRANT** Serrano's

---

[9] Rossman Thompson has ably represented several defendants before this Court. His
performance in this case does not reflect on any lack of ability on his part; he re-entered his
appearance late into the case, and was immediately threatened with the possibility of a severe
sentencing enhancement for Serrano's flight. The lion's share of the blame surely may well lie
with Bowers, who supposedly negotiated a plea agreement with the Government over the course
of several months without once mentioning to Serrano the possibility of suppression. Regardless
of who is more to blame, one thing is clear—throughout the plea bargain process, Serrano did not
receive the effective assistance of counsel guaranteed by the Sixth Amendment.

petition to vacate his sentence under § 2255(a).

ANITA B. BRODY, J.

xc: Speedy Trial

Copies **VIA ECF** on _____ to:

Copies **MAILED** on _07-18-2011_ to:
Joseph Serrano, Deft.

O:\ABB 2011\L-Z\USA v. Serrano Opinion re Petition.wpd